J.S13043/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF G.J.A., P.J.A.          :          IN THE SUPERIOR COURT OF
                                           :               PENNSYLVANIA
APPEAL OF: P.H.A., NATURAL FATHER          :
                                           :
                                           :          No. 1493 WDA 2015

Appeal from the Order January 14, 2015
in the Court of Common Pleas of Cambria County Orphans' Court
at No(s):     2014-937 IVT
              2014-938 IVT

BEFORE: LAZARUS, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MARCH 23, 2016**

P.H.A. ("Father") appeals from the order dated January 14, 2015, and entered on January 15, 2015, granting the petition filed by the Cambria County Children and Youth Service ("CYS" or the "Agency") to involuntarily terminate his parental rights to his children, G.J.A., a female born in March of 2010, and P.J.A., a male born in December of 2006 (collectively, "Children"), pursuant the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

The trial court has set forth the relevant history of this case in its termination order and its order, which serves as its opinion filed pursuant to Pa.R.A.P. 1925(a), that relied upon the factual recitation in the termination

---

[*] Former Justice specially assigned to the Superior Court.

[1] In the order dated January 14, 2015, and entered on January 15, 2015, the trial court also involuntarily terminated the parental rights of J.S., the natural mother of Children, ("Mother").  Mother did not file an appeal and she is not a party to the present appeal.

order. *See* Trial Ct. Order, 9/25/15, at 1; Trial Ct. Order, 1/15/15, at 1-7. We adopt the trial court's factual recitation for purposes of this appeal. *See* Trial Ct. Order, 9/25/15, at 1; Trial Ct. Order, 1/15/15, at 1-7. Importantly, at the time of the January 15, 2015 order, Father had been incarcerated since June of 2014 as a result of an incident that allegedly occurred on June 4, 2013, to which he pled guilty to four counts of recklessly endangering another person. Trial Ct. Order, 1/15/15, at 3; N.T., 12/15/14, at 118. Previously, Father had served a prison sentence in California for a murder conviction. Trial Ct. Order, 1/15/15, at 3. The trial court found that there was no evidence in the record as to Father's current sentence or when he would be released, and that Father had testified that he is a repeat felon under the Pennsylvania State Sentencing Guidelines. *Id.* at 4. Father testified that he would be released from prison in 2015. N.T. at 117.

On January 15, 2015, the trial court entered the order granting the petition to involuntarily terminate Father's parental rights to Children. On May 5, 2015, Father filed a petition for leave to file an appeal *nunc pro tunc*. On August 24, 2015, the trial court granted Father's petition to file an appeal *nunc pro tunc* within thirty days. Father timely filed his *nunc pro tunc* appeal on September 23, 2015, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises one question for this Court's review, as follows:

1. Whether the trial court either abused its discretion or committed an error of law when it granted it terminated [sic] the father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(5), and (a)(8) without clear and convincing evidence?

Father's Brief at 3.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; **R.I.S.**, [614 Pa. 275, 284,] 36 A.3d 567, 572 (2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; **see also Samuel Bassett v. Kia Motors America, Inc.**, [613 Pa. 371, 455], 34 A.3d 1, 51 (2011); **Christianson v. Ely**, 575 Pa. 647, [654-55,] 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**
>
> As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the

trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, [165,] 650 A.2d 1064, 1066 (1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Father's parental rights under Section 2511(a)(1), (2), (5), (8), and (b). *See* Trial Ct. Op., 9/25/15, at 1. Section 2511(a)(1), (2), (5), (8), and (b) provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare

of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5), (a)(8), (b).

This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. **In re C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). We will focus on Subsection 2511(a)(2), and adopt the trial court's discussion in its termination order as this Court's own.[2] **See** Trial Ct. Order, 1/15/15, at 6-8.

The Supreme Court set forth our inquiry under Section 2511(a)(2) as follows.

[Section] 2511(a)(2) provides [the] statutory ground[] for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

---

[2] We note that the trial court appeared to discuss the facts in relation to section 2511(a)(2).

> [The Supreme Court] has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
>> *In re: Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (1986) (quoting In re: William L., 477 Pa. 322, 383 A.2d 1228, 1239 (1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

Father relies on *In re R.I.S.*, to support his argument that incarceration alone is not an explicit basis upon which to base termination of parental rights. He argues that this Court must inquire whether the parent utilized those resources at his or her command while in prison to continue and pursue a close relationship with his children. Father's Brief at 13; *see In re R.I.S.*, 36 A.3d at 572-73. Father asserts that he has worked long hours to provide a financially stable home for Children to return to him.

Father's Brief at 13.   Father states that he has made a commitment to cooperate with any services offered him to facilitate the reunification, and that he is in a transitional period of modifying his behavior, outlook, and parenting methods to implement the permanency plans.  ***Id.***

Our Supreme Court instructed:

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and [] the causes of the incapacity cannot or will not be remedied.

***In re Adoption of S.P.***, 616 Pa. at 328-329, 47 A.3d at 828.

After re-visiting its decision in ***In re R.I.S.*** regarding incarcerated parents, the Supreme Court stated:

> we now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 [Pa.C.S.] § 2511(a)(2). [***See In re E.A.P.***, 944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).  If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b).  In this regard,

- 8 -

> trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re S.P.*, 47 A.3d 817, 830-31 (Pa. 2012) (some internal citations omitted).

The trial court assessed the evidence regarding Father's repeated incapacity to parent Children, and his inability to remedy the conditions and causes of his incapacity to parent Children, at length, which we adopt herein. *See* Trial Ct. Order, 1/15/15, at 6-7. The trial court found that the repeated and continued incapacity, abuse, neglect or refusal of Father has caused Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Father. *See id.* at 8.

Father contends that the trial court abused its discretion and erred as a matter of law in terminating his parental rights, as he had appropriate housing and was on his way to establishing a working budget. Father's Brief at 12. Father claims that he was maintaining the utilities for his residence, but he had some bills that he needed to pay, so he had been working many hours to provide for his family. *Id.* at 12. Father states that the trial court acknowledged that he works very hard when he is not in jail, and that he loves Children, who love him in return. *Id.* Father asserts that with the exception of criminal charges in June of 2013, and a later arrest in June of

2014, for failing to show at his plea hearing on the June 2013 charge, he had not had any criminal charges since Children were born. *Id.* at 14-15. Father also states that after he posted bond in June of 2013, he returned to work in the Cambria County area in the waste disposal field, as his previous employment had taken him out of the area. *Id.* at 15. Father asserts that he was compliant "to a degree" with the Agency permanency plans for Children, and he was in the process of figuring out how to best comply with those plans. *Id.* at 16.

Our review of the record shows that there is ample evidence to support a determination that Father failed to make sufficient progress with the services provided to successfully be capable of parenting Children. As the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's orders with regard to Subsection (a)(2). *In re S.P.*, 47 A.3d at 826-27.

Generally, we would next review the termination of Father's parental rights under section 2511(b) in conducting our two-tiered analysis. *In re C.L.G.*, 956 A.2d at 1004. We find that Father waived any challenge to Section 2511(b) by failing to specifically challenge that section in his concise statement and brief. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on

appeal and the Statement of Questions Involved in his or her brief on appeal). *See* Father's Brief at 16 (specifically challenging Section 2511(a) only). Even if Father had not waived any challenge to Section 2511(b), we would find that there was sufficient, competent evidence in the record to support the trial court's decision.

Our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Further, it is appropriate to consider a child's bond with his or her foster parent. *See In re T.S.M.*, 71 A.3d at 268.

In addition, in *In re T.S.M.*, our Supreme Court set forth the process for evaluation of the existing bonds between a parent and a child, and the necessity for the court to focus on concerns of an unhealthy attachment and

the availability of an adoptive home. The Supreme Court stated the following:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See, e.g., R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)] (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home. . . .
>
> [The Adoption and Safe Families Act of 1997, P.L. 105-89,] ASFA[,] was enacted to combat the problem of foster care drift, where children . . . are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. *See In re R.J.T.*, 9 A.3d at 1186; *In re Adoption of S.E.G.*, [901 A.2d 1017, 1019 (Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. *See*, 42 Pa.C.S. §

6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

*In re: T.S.M.*, 71 A.3d at 268-69.

In the present matter, the trial court considered the needs and welfare of Children, and set forth its bond-effect analysis. The trial court also provided an explanation of why its termination decision was not based on matters that were outside of Father's control. We adopt the trial court's discussion herein. *See* Trial Ct. Order, 1/14/15, at 7-8. The trial court properly considered the best interests of Children in rendering its decision that although there was evidence of a bond between Children and Father, it was in their best interests to sever that bond for their safety and security needs. *See id.*; *In re T.S.M.*, 71 A.3d at 268-69.

Father testified that he loves Children, and they love him, and the trial court found that testimony credible. N.T. at 105; Trial Ct. Order, 1/14/15, at 7. As we stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). Again, as the trial court's factual findings are supported

by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decision with regard to subsection (b). *In re S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the trial court's order terminating Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2016

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PA
ORPHANS' COURT DIVISION

IN RE:                          =       No. 2014-937 IVT
                                        No. 2014-938 IVT

GLORIA JEAN ANDERSON       =
PAUL JACOB ANDERSON

                                =

. . . . . . . . .

APPEARANCES:

For the Petitioner:             TIMOTHY M. AYRES, ESQ.

For Minor Children:             SUZANN LEHMIER, ESQ.

For Natural Father:             JAMES R. KOBAN, II, ESQ.

. . . . . . . . .

ORDER

AND NOW, this 14th day of January, 2015, after conducting an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations:

1. On October 10, 2014, Petitioner, Cambria County Children and Youth Services (CYS), filed Petitions to Terminate the Parental Rights of Paul H. Anderson, age 64, the biological father, and Josie L. Stonerook, age 41, the biological mother, to their two children Gloria Jean Anderson, DOB March 3, 2010, age four, and Paul Jacob Anderson, DOB December 6, 2006, age 8. The grounds averred include 20 Pa.C.S. Section 2511 (a) subsections 1, 2, 5 and

8.

2. Father filed a Petition for Appointment of Counsel and the Court appointed him counsel and appointed a Guardian Ad Litem for the two children. Mother neither sought in forma pauperis status nor requested counsel.

3. A hearing was held by the Court on December 15, 2014. Mother did not appear. Father was transported to the hearing from the Cambria County Prison and testified.

4. The Court gave all counsel until December 29, 2014, to file memoranda and all counsel submitted their legal memoranda to the Court.

5. The evidence presented showed that the Anderson-Stonerook family had been involved with CYS since 2010 due to such issues as housing, finances, mental health, parenting skills, and drug and alcohol abuse. The children were removed and then returned by the Juvenile Court under order dated October 11, 2011.

6. Services were reinitiated with the family on January 13, 2013, and the children removed by emergency order in June 2013, and were declared dependent by order dated June 18, 2013. Father had been arrested for aggravated assault and other charges and Mother was basically unfit to care for the children on her own due to the same housing issues, mental health, parenting, and drug

abuse issues. Mother's actions and inactions placed the safety of the children at risk.

7. Father is a career criminal having served time in California on murder charges. At the present time, he is incarcerated as a result of an incident allegedly occurring on June 4, 2013. On December 1, 2013, he pled guilty to four counts of recklessly endangering another person based on information in the probable cause which states:

> "Your Affiant is Officer Donald J. Wyar of the Portage Borough Police Department. On June 4, 2013, I was called at the office by Stephanie Rogers who stated she was having problems with her neighbor, the Defendant. I responded to the scene and the actor was GOA. I spoke with Rogers, Figard and Barrett who stated the actor waved a knife and stated he was going to kill Rogers. I then spoke with Barrett who stated earlier in the day the Defendant grabbed her in the vagina area and smacked her on the butt. Barrett then retreated into her house. I cleared the scene and minutes later Officer Wyar and I were dispatched to 814 Conemaugh Avenue for the same type of incident where the Defendant was threatening neighbors using racial slurs. The Defendant was also highly intoxicated. The Defendant was taken into custody and while in custody at the office, the Defendant did spit in the face of Officer Wyar while Officer Labosky was standing to Officer Wyar's right. The Defendant also threatened to kill and/or harm all officers. This officer summoned three PSP troopers to the office to assist. The Defendant continued to use racial slurs. The Defendant was then placed in shackles to stop him from kicking and a spit mask was placed on the Defendant to stop him from spitting." (Exhibit 8).

8. Father's sentencing was scheduled for



December 11, 2014. However, according to his testimony, he filed a Motion to Withdraw his plea. In rather convoluted testimony, Father stated he may withdraw the Petition to Withdraw the Plea. In any event, there is no evidence in the record as to what his sentence or status may be or when he will be released. According to his testimony under the Pennsylvania State Sentencing Guidelines, he is a RFEL or repeat felon.

9. Since the children were last placed in agency custody, the Juvenile Court has held three permanency review hearings.

(a) At the hearing held on November 20, 2013, the Juvenile Court found that Father and Mother had made minimal progress toward achieving permanency. Mother still had not addressed her housing, mental health, or substance abuse issues. Father was working long hours in Harrisburg and displayed anger control issues.

(b) At the hearing held on May 5, 2014, the Juvenile Court again found the parties to be minimally compliant with the permanency plan. Mother and Father were living apart. Mother did not have an appropriate home. She had not addressed her mental health or substance abuse issues. Father did move back to Cambria County and had adequate housing. However, he had not addressed his mental health or substance abuse issues.

(c)  At the permanency review hearing held on July 23, 2014, the Juvenile Court found that no progress had been made by either parent.  Father was incarcerated as a result of his arrest on June 4, 2014, and Mother was found to not be a placement option due to her cognitive limitations.  She continued her substance abuse, often visiting the local ER in attempts to obtain narcotics.

10.  Both parents were evaluated by Dennis M. Kashurba, a licensed psychologist, on two occasions; February of 2011 and December of 2013 with the following findings:

A.  On both occasions, Mother was found to have a diagnostic impression of Axis I:  Neglect of Child, by history; opiate dependence, currently in early partial remission; Benzodiazepine abuse, by history; relational problems, NOS.

Axis II:  Personality Disorder, NOS (currently with predominantly dependent traits, with history of schizotypal traits), mild mental retardation.

Mr. Kashurba concluded that the total information available at that time suggested that Josie's status had not improved since the time of prior evaluation nearly three years ago.  She continued to present as an individual with limited cognitive ability and a high degree of cognitive distortions which prevented her from harnessing her

relatively limited cognitive ability to a degree that would make her a suitable primary parent figure for her children. Thus, the then current status of having her children remain in foster care appeared to afford Josie the maximum opportunity to be positively involved in the children's lives as had been the case at the time of prior evaluation.

B. On both occasions, Father was found to have the following diagnostic impression: Axis I, neglect of child, by history; partner relational problem, adult antisocial behavior, by history. Axis II, personality disorder, NOS (with a history of predominantly narcissistic traits along with paranoid or antisocial features.)

Mr. Kashurba concluded that consistent with his opinion at the time of the prior testing, there continued to be no unequivocal information present to suggest that Paul does not have the ability to adequately independently parent his children. However, at the time of prior evaluation, it was his opinion that Paul had "abdicated" the responsibility for raising the children to the bio mom of the children who he did not feel was capable of independently parenting the children. This parental role abdication appeared to have continued by virtue of Paul having limited contact with the children due to his employment outside of the immediate geographical area over several months' time. Father continued to be fully aware that if the children were placed

in his care, he would need to obtain suitable caregiver services for them during his time of employment. He also seems to be aware that the children's bio mom would not likely be a suitable option in terms of caregiver status while he is at work. Father also does appear to have an appropriate degree of affection for his children and to be able to express commitment to pursuing their best interests on an ongoing basis. He also verbalized his commitment to cooperating with whatever services would be offered to facilitate future possible reunification.

11. While it is inconclusive which kind of bond and to what extent a bond exists between Mother and children, Mother does not have the capacity to raise these children.

12. It is apparent from the testimony of the caseworker and Father that strong bonds exist between Father and children. They love him and he loves them. When he is not in jail, he works hard. He works so hard and so many hours he has no time to take care of the children. The relationship between Mother and Father is on and off and Mother taking care of the children while he is at work is not a viable option.

13. The Court's major concern is the safety of the children. Any detriment to the children and severing of the bonds between Father and children and Mother and



children is outweighed by their safety and security needs. A parent's love of his or her children does not preclude a termination.

14. Petitioner CYS has established a legal basis for terminating the parental rights of Paul H. Anderson and Josie Stonerook.

15. The following subsections of 23 Pa.C.S. §2511 (a) establish the basis for terminating the parental rights of these parents:

(1) The parent by conduct continuing for a period of at least 6 months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his/her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least 6 months, the conditions which led to the removal or placement of the child continues to exist, the parent cannot or will not remedy those

conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

(8) The child has been removed from the care of a parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and terminations of the parental rights would best serve the needs and welfare of the child.

16. In terminating the parental rights of these parents, the Court has found that this will best meet the developmental, physical and emotional needs and welfare of the children.

17. The parental rights and duties of Paul H. Anderson and Josie Stonerook to Gloria Jean Anderson and Paul Jacob Anderson are forever terminated. Said terminations to extinguish the power and right of Paul H. Anderson and Josie Stonerook to object to or receive notice of the adoption proceedings. The adoptions of Gloria Jean Anderson and Paul Jacob Anderson may continue without further notice to or consent of Paul H. Anderson and Josie

Stonerook. The custody of Gloria Jean Anderson and Paul Jacob Anderson is hereby confirmed in Cambria County Children and Youth Services pending the final adoption proceedings.

Notice to Paul H. Anderson and Josie Stonerook

You are hereby notified that you have the right pursuant to 23 Pa.C.S. Sections 2923 and 2934(b) to file at any time and update medical and/or social history information with the following:

1. The Court that terminated your parental rights;

2. The Court that finalized the adoption;

3. The agency that coordinated the adoption;

4. The information registry established by the Pennsylvania Department of Human Services pursuant to 23 Pa.C.S. §2921 for the purpose of making that information available to the person to be adopted and to the adoptive parents under the conditions provided by law.

BY THE COURT:

_____
Patrick T. Kiniry, Judge

lmp